UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAKRIYA ABDI MOHAMOOD,

Plaintiff,

v.

MICHELLE LAJOYE-YOUNG et al.,

Defendants.

Case No. 1:26-cv-577

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a former county detainee under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, as to remaining Defendants LaJoye-Young, Heaton, Goodson, Fuller, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong, under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss any action in which the plaintiff is proceeding *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read Plaintiff's *pro*

*se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards to Plaintiff's claims against properly joined Defendants LaJoye-Young, Heaton, Goodson, Fuller, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong, the Court will partially dismiss Plaintiff's complaint as detailed below.

## Discussion

### I. Factual Allegations

Plaintiff was formerly incarcerated at the Kent County Correctional Facility (KCCF) in Kent County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following KCCF personnel: Sheriff Michelle LaJoye-Young, Chaplain S. Heaton, Sergeant Unknown Goodson, Chaplain R. Fuller, Aramark Kitchen Worker Unknown Party #1, Head of Aramark Kitchen Staff Unknown Party #2, Medical Staff Unknown Party #3, Medical Staff R. Kirsten, Deputy E. Milbocker, Deputy Unknown Hinsley, Deputy Unknown Bernhardt, Deputy Unknown Olsen, Deputy Unknown Peters, Sergent Unknown Flanagan, Sergeant Unknown Buchanan, MAT Program Coordinator L. Aubree, Deputy Unknown Hollinrake, Deputy R. Edgerle, Medical Staff Member W. Bree, Deputy D. Visser, Deputy J. Krai, Deputy Unknown Party #4 named as "Frederick," Sergeant M. Shoop, Sergeant Unknown Kleinheksel, Lieutenant T. Koetsier, Lieutenant J. Dock, Sergeant G. Ponce, and Deputy Unknown DeJong. (Compl., ECF No. 1, PageID.1, 5, 6.)

Plaintiff's complaint alleges several "issues practicing [his] religion" while in KCCF. (*Id.*, PageID.7.) Plaintiff's first allegation relates to a kite on August 14, 2025, where he requested to attend Jummah Services, as he is a practicing Muslim. (*Id.*) Plaintiff received a response from Defendant Heaton, a chaplain, that KCCF "doesn't offer Jummah Services and that if [Plaintiff]

liked, [Plaintiff] . . . could schedule a visit with an Imam."[1] (*Id.*) Plaintiff asked to "set up a visit with an Imam," and although a visit was arranged, it was not scheduled for a Friday, "the day the Muslim faith observes Jummah." (*Id.*) Further, Plaintiff's visits with the Imam were conducted in a "glass booth with [Plaintiff's] wrist[s] shackled to the table . . . [and Plaintiff had] to speak to the Imam through the phone." (*Id.*) Plaintiff met with the Imam "multiple times for months" in the same conditions. (*Id.*) Plaintiff alleges that there were "multiple Christian pastors and clergy members who [were] allowed entrance to the inside of [KCCF] units . . . to hold services multiple times [per] week and Christians were allowed to attend them in the multi-purpose rooms in the units." (*Id.*)

Plaintiff ultimately grieved the lack of Jummah services and the conditions of his meetings with the Imam on December 15, 2025. (*Id.*) Plaintiff received a reply from Defendant Heaton stating that she was "working with jail administration and an Imam to see what the options [we]re to accommodate Friday Jummah Service." (*Id.*) Defendant Heaton also replied that she was forwarding Plaintiff's grievance to Defendant Goodson. (*Id.*) Plaintiff then replied in a note to Defendant Heaton that he had a prayer rug in his property from when he "came to the jail . . . from another county." (*Id.*) Plaintiff "was not allowed to get [his] prayer rug." (*Id.*, PageID.7–8.) On an unspecified date, Defendant Goodson told Plaintiff that the Imam could not come into the facility because of "lockdown time" between 12:30 p.m. and 1:00 p.m., and that Muslims could use the multi-purpose room to pray. (*Id.*, PageID.8.) Plaintiff asserts that this did not address his grievance regarding having an Imam conduct Jummah Services, as those services are important for "congregational prayer" and an Imam is required for some religious acts. (*Id.*)

---

[1] In this opinion, the Court corrects the capitalization, abbreviations, and punctuation in quotations from Plaintiff's complaint.

Plaintiff's complaint then alleges several other issues with Defendant Heaton with regard to practicing his religion during this time. On September 7, 2025, Plaintiff submitted a kite to Defendant Heaton asking to be placed on the Halal diet. (*Id.*, PageID.8.) Defendant Fuller met with Plaintiff to "fill out [the] proper paperwork about what [Plaintiff] can eat or not eat" and although Plaintiff indicated he could eat chicken, beef, and fish, he was placed on a vegan diet. (*Id.*) Plaintiff alleges he suffered malnutrition due to a "wrong religious diet." (*Id.*)

In addition to Plaintiff's allegations above regarding his ability to practice his religion, Plaintiff's complaint also contains several sub-headings with allegations addressing "issues receiving medical treatment," "issues against discrimination," "issues receiving cruel and unusual punishments," and "issues with [Plaintiff's] procedural due process rights."[2] (*See id.*, PageID.9–16.) These allegations include claims against Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree and are wholly unconnected to the events set forth above. (*See id.*)[3]

Based on the foregoing allegations, Plaintiff brings First Amendment free exercise of religion claims. Additionally, the Court construes Plaintiff's complaint to raise a Fourteenth Amendment equal protection claim. As relief, Plaintiff seeks injunctive relief and monetary damages.

---

[2] The Court notes that Plaintiff's complaint contains additional allegations regarding the practice of his religion, but those claims either fail to name any Defendants or are not claims against the properly joined Defendants in this action. (*See* Compl., ECF No. 1, PageID.8 – 9, 18); *see also infra* Part II (setting forth the properly joined Defendants in this action).

[3] In the interest of judicial efficiency, in this opinion, the Court does not set these factual allegations because, as explained below, the Court concludes that Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree are misjoined to this action.

## II. Misjoinder

### A. Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("'Unrelated claims against different defendants belong in different suits.' . . . A district judge necessarily has considerable discretion in applying

Rules 18 and 20. The rules 'operate[] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first." (citations omitted, brackets in original)).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim or claims against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should his misjoined claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Heaton is the first party mentioned in Plaintiff's factual allegations. (*See* Compl., ECF No. 1, PageID.7.)[4] Plaintiff alleges that on August 14, 2025, he requested to attend Jummah services, and Defendant Heaton responded that KCCF did not offer Jummah services, but that Plaintiff could meet with an Imam. (*Id.*) Plaintiff alleges that his hands were shackled in a glass booth when meeting with the Imam, and when Plaintiff submitted a grievance on the lack of Jummah services and his inability to meet with the Imam in the KCCF units like Chrisitan inmates, he was told by Defendant Heaton she was "working with jail administration" to see what the options were. (*Id.*) Plaintiff was ultimately told by Defendant Goodson that the Imam could not come into the facility because of "lockdown time." (*Id.*, PageID.8.) Plaintiff's grievance also informed Defendant Heaton that he had a prayer rug in his property, but Plaintiff states that he was not allowed to possess it. (*Id.*, PageID.7–8.) During this same period of time, Plaintiff was placed on a vegan diet by Defendants Heaton and Fuller, after asking to be placed on a Halal diet. (*Id.*, PageID.8.)

Plaintiff's claims against Defendants Heaton, Goodson, and Fuller all involve claims that relate the same transactions and occurrences. Accordingly, the Court finds that Plaintiff's

[4] The analysis of joinder must start somewhere. By accepting the first-mentioned Defendant and the factual allegations against the first-mentioned Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

allegations against Defendants Heaton, Goodson, and Fuller involve common questions of law and fact and that they are properly joined for the purpose of this opinion. Additionally, although Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong are not named in the body of the complaint, in deference to Plaintiff's *pro se* status and reading the complaint in the light most favorable to Plaintiff, the Court will consider Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong to be properly joined to this action.

As to Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree, Plaintiff presents allegations against them regarding "issues receiving medical treatment," "issues against discrimination," "issues receiving cruel and unusual punishments," and "issues with [Plaintiff's] procedural due process rights." (*See id.*, PageID.9–16.) Plaintiff's allegations against these Defendants are wholly unconnected to the above-described interactions with Defendants Heaton, Goodson, and Fuller.

Under these circumstances, for the reasons set forth above, the Court concludes that Plaintiff has properly joined Defendants Heaton, Goodson, Fuller, LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong. However, the Court concludes that Plaintiff has improperly joined Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree to this action.

**B. Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree, the Court must determine an appropriate remedy. Under Rule 21 of the

Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the

aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

Plaintiff's allegations against Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree relate to events that occurred in August through December 2025. (Compl., ECF No. 1, PageID.9–16.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree because they are misjoined. The Court will dismiss Plaintiff's claims against these individuals without prejudice.[5]

## III. Failure to State a Claim Standard

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

[5] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must pay the required filing fees or apply in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV. Analysis

### A. Failure to Name Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong in the Body of the Complaint

Plaintiff lists Defendant LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong, as Defendants in this action; however, Plaintiff fails to allege any facts showing how Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong in the body of his complaint. (*See generally* Compl., ECF No. 1.) Plaintiff's claims against Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject

to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendants LaJoye-Young, Shoop, Kleinheksel, Koetsier, Dock, or Ponce liable due to their supervisory positions, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants LaJoye-Young, Shoop, Kleinheksel, Koetsier, Dock, or Ponce encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, Plaintiff's claims against Defendants LaJoye-Young, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong will be dismissed for failure to state a claim.

**B. First Amendment Religious Exercise Claims**

Plaintiff alleges that Defendants Heaton, Goodson, and Fuller violated his First Amendment right to the free exercise of religion when Plaintiff, a Muslim, (i) was not provided with Jummah services, (ii) was only permitted to meet with the Imam in a glass booth with his wrists shackled, (iii) was denied access to his prayer rug, and (iv) was placed on a vegan diet in lieu of a Halal diet that allowed meat. (*See* Compl., ECF No. 1., PageID.7–8.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same);

*Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff alleges he is Muslim, and at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has sufficiently alleged his sincerely held religious beliefs and that his allegations above relate to his religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.* Thus, Plaintiff must allege that his religious exercise has been substantially burdened.

**1. Lack of Jummah Services**

Plaintiff contends that Defendant Heaton, a chaplain, and Defendant Goodson failed to organize Jummah religious services at KCCF, despite Plaintiff's request. Plaintiff's allegations indicate that he was not the only Muslim inmate at KCCF at this time, as he alleges that Jummah service is important for "congregational prayer" and that Defendant Goodson told Plaintiff, "we

[]Muslims[] can use the multi-purpose room to pray," without an Imam present. (Compl., ECF No. 1, PageID.8.) The Sixth Circuit has "consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services." *Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010). However, accepting Plaintiff's allegations as true, there were other Muslim inmates in KCCF, and Plaintiff alleges that he was forced to refrain from congregational prayer for approximately four months and to choose between either abandoning any opportunity for congregational prayer or gathering without an Imam, who was required for some religious acts. (*See* Compl., ECF No. 1, PageID.8.) Although Plaintiff has by no means proven his claims, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's First Amendment free exercise claims against Defendants Heaton and Goodson regarding the lack of Jummah services at KCCF may not be dismissed on initial review.

### 2. Restrictions During Imam Meetings

When Plaintiff requested to meet with the Imam through Defendant Heaton, Plaintiff alleges that he was provided with non-contact visits only. For at least four months, Plaintiff's visits with the Imam took place in a glass booth with Plaintiff's wrists shackled to the table, and Plaintiff spoke to the Imam through the phone. (Compl., ECF No. 1, PageID.7.) After Plaintiff grieved the issue, Defendant Goodson told Plaintiff that an Imam could not come into the facility, presumably for a contact visit with Plaintiff, because of the "lockdown time." (*Id.*, PageID.8.) At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's First Amendment free exercise claims against Defendants Heaton and Goodson regarding the conditions of Plaintiff's meetings with the Imam.

### 3. Access to Prayer Rug

Plaintiff alleges that at some point, he wrote to Defendant Heaton advising Heaton that he had a prayer rug in his property when he "came to the jail . . . from another county." (*Id*., PageID.7.) Plaintiff then states that he "was not allowed to get [his] prayer rug." (*Id*., PageID.7–8.)

Although Plaintiff's allegations lack specificity as to Defendant Heaton's involvement in the determination to not permit Plaintiff "to get [his] prayer rug," at this stage of the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to him. Under these circumstances, the Court will not dismiss Plaintiff's First Amendment free exercise claim against Defendants Heaton regarding Plaintiff's use of his prayer rug.

### 4. Placement on Vegan Diet

In Plaintiff's complaint, he alleges that on September 7, 2025, he submitted a kite to Defendant Heaton asking to be placed on the Halal diet. (*Id.*, PageID.8.) Plaintiff states that a Halal diet may include chicken, beef, and fish. (*Id.*) Defendant Fuller met with Plaintiff to "fill out [the] proper paperwork about what [Plaintiff] can eat or not eat." (*Id.*) Plaintiff was ultimately placed on a vegan diet. (*Id.*) Plaintiff alleges that his placement on a vegan diet violated his First Amendment free exercise rights; however, Plaintiff does not contend that the vegan religious diet requires him to eat anything that is not permitted by his religious beliefs. Instead, Plaintiff contends that his religious beliefs would permit him to eat certain foods that are not supplied in the vegan diet and that he wished to eat these other foods, not that he was required to eat these additional foods as part of his religious practice. However, as explained below, that does not rise to the level of a First Amendment Free Exercise Clause violation.[6]

---

[6] To the extent Plaintiff intends to raise an Eighth Amendment claim by alleging he suffered malnutrition due to the vegan diet, he fails to state a claim. "The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51

The Sixth Circuit Court of Appeals and this Court have rejected the proposition that serving a Halal vegan meal to inmates constitutes a substantial burden on Muslim beliefs. *See, e.g.*, *Robinson v. Jackson*, 615 F. App'x 310, 313-314 (6th Cir. 2015); *Davis v. Heyns*, No. 1:15-cv-19, 2017 WL 762401 (W.D. Mich. Feb. 28, 2017); *Hudson v. Caruso*, 748 F. Supp. 2d 721, 729-730 (W.D. Mich. 2010). Specifically, in *Robinson v. Jackson*, the Sixth Circuit explained:

> Prisoners have a constitutional right to meals that meet their nutritional needs; indeed, they have a constitutional right to be served meals that do not violate their sincerely-held religious beliefs. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). But there is no constitutional right for each prisoner to be served the specific foods he desires—such as Halal meat—in prison. *See Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999).

*Robinson*, 615 F. App'x at 314. In *Robinson v. Jackson*, the Sixth Circuit further explained that "while [the prisoner-plaintiff] may prefer to be served '[H]alal meat entrees rather than vegetarian entrees and non-meat substitutes, his food preferences, as a prisoner, are limited.'" *Id.* (citations omitted). The same reasoning applies to the present action. Here, it is clear from Plaintiff's complaint that he would prefer to eat "chicken, beef, and fish," all of which he describes as permitted under a Halal diet; however, Plaintiff does not allege that his vegan diet violated his religious tenets. Therefore, Plaintiff's allegation that the religious menu is vegan does not show a substantial burden on the free exercise of his religion.

Accordingly, Plaintiff's First Amendment Free Exercise Clause claims regarding his religious diet at KCCF will be dismissed for failure to state a claim. Further, because there are no

---

F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Constitution "does not mandate comfortable prisons," however. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). Here, Plaintiff fails to allege any facts that would tend to show malnutrition, such as weight loss or health consequences, or the intentional deprivation of food or caloric intake by KCCF staff or Defendants. Plaintiff's conclusory statement that he suffered malnutrition, without any additional factual allegations, is insufficient to state a claim.

additional claims against Defendant Fuller in the complaint, Defendant Fuller will be dismissed from this action.

### C. Fourteenth Amendment Equal Protection Claims

Plaintiff alleges that were "multiple Christian pastors and clergy members who [were] allowed entrance to the inside of [KCCF] units . . . to hold services multiple times [per] week and Christians were allowed to attend them in the multi-purpose rooms in the units." (Compl., ECF No. 1, PageID.7.) Plaintiff claims that Defendants Heaton and Goodson, however, provided Plaintiff with only non-contact individual visits with the Imam and did not provide Jummah services. (*See id.*) The Court construes Plaintiff's allegations to raise Fourteenth Amendment equal protection claims against Defendants Heaton and Goodson. (Compl., ECF No. 1, PageID.8.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

At this early stage of the proceedings, the Court will not dismiss Plaintiff's Fourteenth Amendment equal protection claims against Defendants Heaton and Goodson regarding the lack of Jummah services and the meeting restrictions during Plaintiff's meeting with the Imam.[7]

**Conclusion**

For the foregoing reasons, the Court will drop Defendants Unknown Party #1, Unknown Party #2, Kirsten, Milbocker, Hinsley, Bernhardt, Olsen, Peters, Flanagan, Buchanan, and Aubree as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

Further, having conducted the review required by 28 U.S.C. § 1915(e)(2), the Court determines that Defendants LaJoye-Young, Fuller, Unknown Party #3, Hollinrake, Edgerle, Bree, Visser, Krai, Unknown Party #4, Shoop, Kleinheksel, Koetsier, Dock, Ponce, and DeJong will be dismissed for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment free exercise claim regarding his placement on a vegan diet against remaining Defendants Heaton and Goodson. The following claims against Defendants Heaton and Goodson remain in the case: (i) Plaintiff's First Amendment Free Exercise Clause claim against Defendants Heaton and Goodson regarding the lack of Jummah services and restrictions during Imam meetings, (ii) First Amendment Free Exercise Clause claim against Defendant Heaton regarding the denial of access to a prayer rug, and (iii) Fourteenth Amendment equal protection claims against Defendants Heaton and Goodson regarding the lack of Jummah services and

[7] To the extent that Plaintiff intended to bring equal protection claims regarding the denial of his prayer rug and his receipt of a vegan diet, Plaintiff would fail to state such claims because Plaintiff fails to allege any facts to suggest that he was treated differently than other inmates who were similarly situated.

restrictions during Imam meetings. The Court will serve the complaint on Defendants Heaton and Goodson.

An order consistent with this opinion will be entered.

Dated: September 2, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge